UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO,
ANTHONY D'AQUILA, MICHAEL O'TOOLE,
FRANK H. FINKEL, JOSEPH FERRARA, SR.,
MARC HERBST, THOMAS CORBETT,
MICHAEL C. BOURGAL and DENISE
RICHARDSON, as Trustees and fiduciaries of
the Local 282 Welfare, Pension, Annuity, Job
Training, and Vacation and Sick Leave Trust
Funds,

                          Plaintiffs,                              **REPORT AND**
                                                                      **RECOMMENDATION**
          -against-                                 CV 15-5143 (JMA)(AYS)

SWEET HOLLOW MANAGEMENT CORP.,

                          Defendant.
-------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

      This is an action commenced by plaintiffs Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, Joseph Ferrara, Sr., Marc Herbst, Thomas Corbett, Michael C. Bourgal and Denise Richardson (the "Trustees"), as Trustees and fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Funds") (collectively "Plaintiffs"), against defendant Sweet Hollow Management Corp, ("Sweet Hollow" or "Defendant"), pursuant to Sections 502(g)(2) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(g)(2) and 1145, to collect contributions and related relief allegedly due the Funds under Defendant's collective bargaining agreements with Building Material Teamsters Local 282 (the "Union").

      Presently before this court, on referral from the Honorable Joan M. Azrack for report and recommendation, is Plaintiffs' motion for summary judgment.

1

For the reasons set forth below it is respectfully recommended that Plaintiffs' motion be denied.

## BACKGROUND

Basis of Facts Recited Herein

The facts set forth below are drawn largely from the parties' statements of material facts submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Rule 56.1 Statements"). The facts are undisputed unless otherwise noted.

The Court turns to discuss the facts relied upon by the parties in connection with the present motion.

A. Factual Allegations

1. The Parties

Sweet Hollow is a New York Corporation. Sweet Hollow's business was in the nature of the transportation of landscaping/nursery dirt and topsoil from supply yards to various locations in Nassau and Suffolk County, as well as to locations in the five boroughs of New York City. Sweet Hollow's president and sole shareholder, Gail Kourbage ("Kourbage") has been at its helm for over 25 years.

Plaintiffs are Trustees and fiduciaries of the Funds. The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust of which there are two, one that expired on September 23, 2012 (the "First Trust Agreement") and one that took effect as of September 24, 2012 (the "Second Trust Agreement") (collectively the "Trust Agreements"), for the purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with the Union and providing benefits to eligible participants.

2

The collective bargaining agreements and the Trust Agreements set forth "terms of the plan," establishing that the Trustees are fiduciaries responsible for administering the Funds and that the Funds are beneficiaries of the collective bargaining and Trust Agreements.

2. The Collective Bargaining Agreements

Plaintiffs maintain that Sweet Hollow was signatory to three different collective bargaining agreements ("CBAs") with the Union for the years 2005 and running through 2021. Each CBA had different terms and conditions regarding "covered work" as well as different benefit contribution rates.

Sweet Hollow was a purported signatory to the 282 Nassau-Suffolk Heavy Construction & Excavating and Asphalt Agreement ("2008 Nassau Heavy CBA") from the periods from July 1, 2005, through June 30, 2008; July 1, 2008 to June 30, 2011; July 1, 2011 to June 30, 2016. The 2008 Nassau Heavy CBA provides that Sweet Hollow is bound to the Trust Agreements. (Declaration of Jospeh Puccio ("Puccio Decl."), Docket Entry ("DE") [78-4], ¶ 7; Ex. C (the 2005-2008 Memorandum of Agreement, (the "2008 MOA"), DE [78-7], later memorialized in Ex. D (2008 Nassau Heavy CBA), DE [78-8].)

The First Trust Agreement provides that:

In the event the Employer has neither signed nor authorized an Industry association to sign a current collective bargaining agreement on its behalf, the Employer shall remain obligated to make timely contributions to each Fund as set forth in the most recent collective bargaining agreement to which the Employer is a party unless the Trustees have received notice from the Employer, at least 60 days prior to the expiration of the most recent collective bargaining agreement to which the Employer is a party, that the Employer does not intend to sign a new collective bargaining agreement and will not contribute to the Funds for work performed after the expiration of the most recent collective bargaining agreement to which it is a party. If the Employer makes contributions at the rates stated in the current collective bargaining agreement applicable to its Industry, the Employer shall be deemed a party to that collective bargaining agreement shall be obligated to make timely contributions to each Funds as set forth in that collective bargaining agreement.

(Puccio Decl. Ex. A (First Trust Agreement), DE [78-5], at 27.)

The Second Trust Agreement provides that:

In the event the Employer has neither signed nor authorized an Industry association to sign a current collective bargaining or participation agreement on its behalf, the Employer shall remain obligated to make timely contributions to each Fund as set forth in the most recent collective bargaining or participation agreement to which the Employer is a party unless the Trustees have received written notice from the Employer, at least 60 days prior to the expiration date of the most recent collective bargaining or participation agreement and will not contribute to the Funds for work performed after the expiration date of the most recent collective bargaining or participation agreement to which it is a party. If the Employer makes contributions at the rates state in the current collective bargaining agreement applicable to its Industry, the Employer shall be deemed a party to that collective bargaining agreement shall be obligated to make timely contributions to each Fund as set forth in that collective bargaining agreement. By making contributions to a Fund or agreeing to make contributions to a Fund, the Employer shall be deemed to adopt, accept and ratify the current Employer Trustees and all successor Trustees and adopt, accept and ratify the Trust and all actions of the Trustees and Funds thereunder. Upon examination of the collective bargaining agreement, the Employer shall be required to make contributions until it is no longer under a duty to make such contributions pursuant to an obligation arising under the National Labor Relations Act or until it ceases to be an Employer within the meaning of this Agreement as above provided, whichever is later. The Trustees may enforce such contribution obligation in a United States District Court.

(Puccio Decl., Ex. B (Second Trust Agreement, DE [78-6], at 24-25.)

Sweet Hollow also became a signatory to the Metropolitan Trucker's Association & Independent Trucker's CBA ("MTA") for the period of July 1, 2012 to June 30, 2016. (Puccio Decl., Ex. P, DE [78-24].)

Sweet Hollow was also signatory to the New York City Heavy Construction & Excavating CBA ("NYC Heavy") for the periods of July 1, 2006 through June 30, 2009; July 1, 2009 through June 30, 2013; and for the period of July 1, 2013 through June 30, 2017. (Puccio Decl., Ex. K, DE [78-19]; Ex. L, DE [78-25]; Ex. M, DE [78-26].)

4

3. "Covered Work" Definition

The 2008 Nassau Heavy CBA defined "covered work" as:

Heavy Construction and Excavating Work is hereby defined as the Construction of Engineering Structures and Building Foundations, exclusive of the Erection of Building Superstructures, since this latter work is agreed to be a separate and distinct branch of the Construction industry. If the Employer engages in any work covered by the Union's High Rise Contract, both parties shall comply with all other conditions then existing in that Agreement.

(Puccio Decl., Ex. D. at 1.)

The Nassau Heavy CBA for period of July 1, 2008 through June 30, 2011, contained the same definition of "covered work," as did the Nassau Heavy CBA for the period from July 1, 2011 through June 30, 2016. (Puccio Decl., Ex. E, DE [78-9], at 1; Ex. G, DE [78-13], at 1.) Then in 2013, the NYC Heavy CBA enlarged the scope of covered work. The "covered work definition now included "all excavation and sitework including but not limited to all installation, relocation or removal of utilities, all drainage, landscaping, curbsetting and paving." (Puccio Decl., Ex. M, DE [78-21], at 1, Sec. 1(B).) This same amended "covered work" definition was contained in the NYC Heavy CBA for the period of July 1, 2017 through June 30, 2021. (Puccio Decl., Ex. N, DE [78-22], at 1, Sec. 1(B).)

The MTA CBAs definition of "covered work" remained essentially the same from 2016-2023. The MTA CBA provide that covered work shall apply to a Union member "on any day that they drive a dump truck, dump trailer, flat bed trailer, or flo-boy." (Puccio Decl., Ex. P, DE [78-24], Sec. 1(C); Ex. Q, DE [78-25], Sec. 1(C).) The MTA CBAs further provide that "Heavy Construction Work" shall include, <u>inter alia</u>, "(e) the hauling of any material, processed or otherwise, to or from a jobsite at which Local 282 or another Building Trades Union is performing (a "Jobsite")." (Puccio Decl., Ex. P, Sec. 44-A(3); Ex. Q, Sec. 44-A(3).) The MTA CBAs further define "covered work" in the provisions entitled "Plant Work and Light

5

Construction Work." Section 44, A-1, defines "Plant Work" to be transportation "of processed material between docks, terminals, quarries, sand mine, rail yards, nurseries, cemeteries, and/or plants located in one of the five boroughs or Nassau or Suffolk County." (Puccio Decl., Ex. P, Sec. 44(A)(1); Ex. Q, Sec. 44(A)(1); Ex. R, Sec. 44(A)(1).)

As each CBA has different "covered work" definitions, the parties disagree as to which contribution rate Sweet Hollow was obligated to pay on behalf of its Union employees.

B.  Procedural History

The initial case was commenced on September 3, 2015. (DE [1].) In light of the parties' representations that they were working to resolve the matter, (see DE [10], [11], [12]), discovery did not commence January 9, 2017. (Electronic Scheduling Order dated 01/09/2017.) Following numerous discovery extensions and discovery motions, as well as other settlement attempts, discovery was finally completed in 2021. (See DE [60].)

On June 22, 2021. Plaintiffs commenced a second action, Gesualdi v. Sweet Hollow Management Corp., 21-cv-3491, involving similar allegations of underreporting and underpayment of benefit contributions against Sweet Hollow resulting from subsequent audits. The second litigation contained allegations concerning 2013-2017. Upon Plaintiffs' request, (see DE [54]), and Sweet Hollow's failure to oppose the motion, on December 10, 2021, the Court granted the request and consolidated the two cases to proceed under the earlier case number, 15-cv-5143. (See Order dated 12/10/2021.)

Subsequent to the consolidation, the case was transferred to the Honorable Joan M. Azrack on July 8, 2022. Throughout the next year the parties again engaged in settlement discussions. On August 8, 2023, in light of the failure to settle, the Court issued a summary judgment briefing schedule. (Order dated 08/08/2023.) After extensions of the briefing schedule,

the motion was filed on February 20, 2024. (DE [78].) On April 16, 2024. the fully-briefed motion was referred to the undersigned for report and recommendation. (Order Referring Motion dated 04/16/2024.)

II.	The Motion for Summary Judgment

Plaintiffs seek summary judgment asserting that there are discrepancies as to what Sweet Hollow paid the Funds and what Sweet Hollow was required to pay under the CBAs. Plaintiffs claim that the alleged discrepancies were determined by Funds based on payroll audits and submitted remittance reports. Defendant Sweet Hollow contends that the discrepancies are the product of the Funds' misreading of the CBAs. Sweet Hollow argues that the audit reports are erroneous because not only are they based off speculation as to hours worked but that the auditors made improper allocations of benefit hours for Sweet Hollow employees when performing "covered work" as the term is defined differently in each CBA.

Having summarized the facts and the parties' positions the Court turns to the merits of the motion.

## DISCUSSION

I.	Legal Principles: Standards on Summary Judgment

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law.

7

Id. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. Celotex, 477 U.S. at 322. Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party". Tolbert v. Smith, 2015 WL 3875237 *4 (2d Cir. 2015); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in her favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256–57 (1986).

In addition, "[a]ffidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001); see also Fed. R. Evid. 802; Fed. R. Civ. P. 56(e).

II.   Definition of "Covered Work"

In their required Local Rule 56.1 Statement of Undisputed Material Facts, Plaintiffs have propounded 2,432 statements spanning 512 pages, that they contend are undisputed and material in support of their summary judgment motion. (Plaintiffs' Statement of Undisputed Material Facts ("56.1 Stmt."), DE [78-2].) The Court disagrees as to whether these statements are indeed

8

"undisputed" as the sheer number of statements is astonishing even in a case with this lengty of history.

Upon closer examination, the Court has determined that the statements are all based on Plaintiffs' theory of "covered work." Plaintiffs cite to case law within this District that lend support for their theory of "covered work", such as Gesualdi, et al. v. F.G. Trucking Inc., et al., 12-cv-3450, 2014 WL 12993934 (E.D.N.Y. Dec. 29, 2014) (explaining "covered work" under the 2008-2011 Nassau Heavy CBA). However, while cases have distinguished "covered work" under the same CBAs at issue in the instant case, the cases cited have all dealt with one CBA. The present case deals with three different CBAs, each with different "covered work" provisions. Not one of the three CBAs address the issue of which CBA controls benefit contributions when covered employees may be working in different counties engaged in "covered work." Further, none of the CBAs provide a definition of "construction work" so as to differentiate non-construction work from constructions work.

Before the Court can even begin to analyze whether Sweet Hollow failed to remit the correct benefit contributions for the time periods covered by the CBAs, there is a material question of fact as to which of the three "covered work" definitions apply and whether in fact Sweet Hollow's employees were in engaged in "covered work" under any of the CBAs. As such, at this time, the Court respectfully recommends that Plaintiffs' motion for summary judgment be denied.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiffs' motion for summary judgment, appearing as Docket Entry No. 78 herein, be denied.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
August 12, 2024

                                                   /s/ Anne Y. Shields
                                                  Anne Y. Shields
                                                  United States Magistrate Judge